IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK DAVENPORT,<br><br>  Plaintiff,<br><br>v.<br><br>DEB BLADES, WEXFORD HEALTH SOURCES, INC., PERCY MYERS, and JOHN/JANE DOE MEDICAL STAFF,<br><br>  Defendants. | Case No. 23-cv-2221-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Mark Davenport, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Davenport alleges Defendants were deliberately indifferent to his protruding hemorrhoids, in violation of the Eighth Amendment. He seeks monetary damages and injunctive relief.

  This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

### *In Forma Pauperis* **Motion**

Section 1915(g) prohibits a prisoner from bringing a civil action or appealing a civil judgment *in forma pauperis* ("IFP"), "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). Davenport has identified several cases he previously filed (Doc. 1, pp. 5-11). A further review of cases filed in this district and on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) reveals that Davenport has had at least three cases which were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See Davenport v. Lind, et al.*, Case No. 12-cv-980-GPM (S.D. Ill., dismissed Nov. 13, 2012 for failure to state a claim); *Davenport v. Green, et al.*, Case No. 13-cv-484-MJR (S.D. Ill., dismissed June 24, 2013 for failure to state a claim); and *Davenport v. Szczepanski*, Case No., 16-cv-494-NJR (S.D. Ill., dismissed June 14, 2016 for failure to state a claim).

Thus, Davenport has accumulated three "strikes" for purposes of Section 1915(g) and cannot proceed IFP unless he is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

"Imminent danger" within the meaning of Section 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). Courts

"deny leave to proceed [as a pauper] when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed [as a pauper]." *Id*. at 330. The imminent danger exception is available for "genuine emergencies," where "time is pressing." *Lewis v. Sullivan*, 279 F. 3d 526, 531 (7th Cir. 2002).

At this stage, Davenport has adequately alleged imminent danger due to his post-operative complications. He continues to suffer from pain due to a rectal protrusion, which also blocks the passage of feces and causes him pain and itching. Thus, the Court will allow Davenport to proceed under the imminent danger exception to the three strike rule. Davenport's motion to proceed *in forma pauperis* (Doc. 3) is **GRANTED**. An initial partial filing fee will be calculated by separate order.

## The Complaint

In his Complaint, Davenport makes the following allegations: Davenport had a hemorrhoid banding procedure on May 27, 2022 (Doc. 1, p. 14; Doc. 1-11). On May 30, 2022, he alerted Lieutenant Johnson that he was bleeding during bowel movements (Doc. 1, p. 14). He showed Johnson his post-op care plan which indicated he should return to the emergency room if he experienced bright red rectal bleeding. In the healthcare unit, he met with nurse Deb Blades, who examined his hemorrhoids (*Id*.). She identified two hemorrhoids and noted that they were bleeding. She squeezed the

3

hemorrhoids, causing significant pain (*Id.*). She issued him Tylenol and hemorrhoid cream per instructions from Dr. Myers and released him back to the housing unit (*Id.*). He informed Blades that the bleeding would continue as he felt pressure building on the left side of his stomach (*Id.*). Davenport alleges that this placed Blades on notice of impending danger.

Once returned to his cell, his rectum "erupted" and he began bleeding (*Id.* at p. 14). He passed out on the floor. He alleges that Blades was deliberately indifferent to his medical needs and that he was in imminent danger of injury.

Medical staff on the 3-11 p.m. shift responded to the Code 3 medical emergency after Davenport passed out (*Id.* at p. 15). Davenport alleges that the staff failed to treat him as a patient, instead treating him as a nuisance and failed to take even the minimal steps to guard against injury. Davenport alleges that staff refused to enter his cell because of the amount of blood in the cell (*Id.*). Davenport was admitted to the infirmary and given a call button to inform the nurse if he bled again and to show any blood left in the toilet after using the restroom (*Id.*). Davenport eventually had a third bleeding event which he showed to the nurse. He was then moved into an isolation cell for a 72-hour watch. Although the nurse assessed blood in his toilet during his stay in the isolation cell, she failed to chart the bleeding.

Davenport alleges that Dr. Myers acted with deliberate indifference because he failed to instruct staff to assess Davenport's bleeding. Dr. Myers also declined to transfer Davenport to Pinckneyville hospital. He further declined to order a high fiber diet as prescribed post-surgery (*Id.* at p. 20). On June 1, 2022, Dr. Myers saw Davenport on the

doctor call line; he concluded that Davenport's bleeding was not serious. He also refused to examine Davenport's extrusion from his rectum and denied his request to be sent back to the specialist who performed his prior banding (*Id.* at p. 16). Instead, Dr. Myers informed Davenport that he would be sent to a prior specialist who performed a "failed" banding surgery. Davenport alleges it was improper to refuse a follow-up with his current colorectal specialist (*Id.*). As a result, the specialist who performed his most recent surgery, Dr. Glasgow, was never given notice of Davenport's complications post-surgery (*Id.* at pp. 16-17). Davenport alleges he still suffers from disfigurement, his condition remains undiagnosed, and he suffers from chronic and substantial pain (*Id.* at p. 17).

Davenport submitted numerous sick call slips, requesting care for his rectal protrusion (*Id.* at pp. 17-18). On December 18, 2022, he informed Nurse Molly that he submitted 15 nurse call slips regarding his post-operation complications. Nurse Molly submitted Davenport for a doctor call line for January 3, 2023, but the appointment was subsequently cancelled (*Id.* at p. 18). On March 28, 2023, during a visit to the hypertension chronic clinic, he informed physician assistant ("PA") Dessi of his lack of follow-up by Dr. Myers. He informed her of his rectal protrusion, noting that it swelled during bowel movements causing severe pain and itching (*Id.*). He informed Dessi that he needed to be referred back to Dr. Glasgow for surgery to remove the protrusion (*Id.*). Dessi declined to refer him for follow-up care for his bleeding.

## **Preliminary Dismissals**

To the extent that Davenport alleges claims against the 3-11 p.m. medical staff, Davenport fails to state a claim. Davenport alleges that the 3-11 p.m. staff refused to

provide him care after a Code 3 medical emergency was called, but he fails to indicate what staff responded to the Code 3 or even the number of them. Although Davenport may certainly allege claims against identified John Does (i.e., John Doe #1, John Doe #2), he includes groups which are too generic to survive threshold review as he does not describe the staff members or even state the number of them present during his emergency. Thus, his claims against "medical staff" are **DISMISSED without prejudice**.

Davenport also refers to several nurses and other medical staff which he sought care from, including PA Dessi and Nurse Molly. He fails, however, to identify these individuals as defendants in the caption of his Complaint. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Therefore, claims against individuals not identified as defendants in the case caption are **DISMISSED without prejudice**. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

Finally, to the extent that Davenport alleges that Nurse Blades intentionally inflicted emotional distress on Davenport by failing to properly treat his condition, he fails to state a claim. In order to state such a claim under Illinois law, Davenport must show that Blades acted in an extreme and outrageous way, intended to inflict severe emotional distress or knew of the high probability that it would occur, and caused the plaintiff to suffer from severe emotional distress. *See Doe v. Calumet City*, 161 Ill.2d 374, 392 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). But other than stating that Blades knowingly denied him care, Davenport fails to establish any of the elements of the claim. Thus, the state law claim against Blades is also **DISMISSED without prejudice**.

6

### Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Deb Blades for failing to treat Davenport's rectal protrusion on May 30, 2022.

**Count 2:** Eighth Amendment deliberate indifference claim against Dr. Percy Myers for failing to treat and delaying care for Davenport's rectal protrusion.

**Count 3:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or practice of delaying urgent referrals and encouraging physicians to spend minimal time with patients.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Davenport states viable claims in Counts 1 and 2 against Blades and Dr. Myers for deliberate indifference in treating his rectal protrusion. Davenport also states a claim against Wexford. Davenport alleges that Wexford had a policy and/or practice of delaying referrals and spending minimal amount of time with patients in order to save money. He further alleges that there were often multi-week delays in

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

referrals until more inmates could be taken in a single trip to a specialist, in order to save money (Doc. 1, p. 21). Thus, Count 3 shall also proceed against Wexford.

### Pending Motions

In addition to his Complaint, Davenport also filed a motion for preliminary injunction (Doc. 2, p. 1). Davenport alleges that Dr. Myers has continued to delay Davenport treatment for his post-operation complications. Dr. Myers refused to examine Davenport and failed to send him to a colorectal specialist. Davenport alleges that he continues to experience painful bowel movements, swelling, pain, itching, and blockages due to the lack of care. Given the concerning nature of Davenport's allegations, the Court **DIRECTS** Defendant Dr. Myers to respond to the motion (Doc. 2) in an expedited fashion. Dr. Myers's response is due **July 28, 2023**. The Court also **ADDS** Warden David Mitchell to the case, in his official capacity only, for the purpose of implementing any injunctive relief awarded. Because Dr. Myers and Warden Mitchell are unlikely to receive service by the response deadline, the Clerk of Court is **DIRECTED** to mail a copy of this Order and Davenport's motion for preliminary injunction (Doc. 2) to Dr. Myers, Warden Mitchell, and the Illinois Attorney General's Office.

### Disposition

For the reasons stated above, Count 1 shall proceed against Deb Blades. Count 2 shall proceed against Dr. Percy Myers and Count 3 shall proceed against Wexford Health Sources, Inc. Warden David Mitchell is **ADDED** to the case for the purpose of implementing any injunctive relief awarded to Davenport. All other potential claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Deb Blades, Dr. Percy Myers, Warden David Mitchell, and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Davenport. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Davenport, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Davenport, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the

costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Davenport is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 7, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**