IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARK DAVENPORT,** | |
| **Plaintiff,** | |
| v. | Case No. 23-cv-2221-NJR |
| **DEB BLADES, WEXFORD HEALTH SOURCES, INC., PERCY MYERS, and DAVID MITCHELL,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Mark Davenport, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

On June 28, 2023, Davenport filed his Complaint alleging deliberate indifference in the treatment of his protruding hemorrhoids in violation of the Eighth Amendment. Davenport alleged that since his hemorrhoid banding surgery on May 27, 2022, he continues to suffer from bleeding, pain, and itching from a rectal protrusion (Doc. 7, pp. 4-5). As to Dr. Myers, Davenport alleged that Dr. Myers declined to send him to a hospital for his bleeding or to prescribe a high fiber diet (*Id*. at p. 4). He refused to examine Davenport's rectal protrusion and denied Davenport's request to be sent back to the

specialist who performed his previous hemorrhoid banding. He was allowed to proceed on the following counts:

> Count 1: Eighth Amendment deliberate indifference claim against Deb Blades for failing to treat Davenport's rectal protrusion on May 30, 2022.
>
> Count 2: Eighth Amendment deliberate indifference claim against Dr. Percy Myers for failing to treat and delaying care for Davenport's rectal protrusion.
>
> Count 3: Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or practice of delaying urgent referrals and encouraging physicians to spend minimal time with patients.

(Doc. 7, p. 7).[1]

In addition to his Complaint, Davenport filed a motion for preliminary injunction seeking referral to a colorectal specialist for treatment (Doc. 2). Davenport alleged that he started bleeding three days after his hemorrhoid banding surgery. Nurse Deb Blades noted two protruding hemorrhoids that were bleeding, but Dr. Myers ordered that Davenport be returned to his cell with hemorrhoid cream (*Id.* at p. 1). Davenport alleged that Dr. Myers continued to deny him adequate care, refusing to examine his condition and delaying Davenport's request to be sent to a specialist.

---

[1] Davenport was prohibited from filing an action *in forma pauperis* because he had filed three or more cases that were dismissed on the grounds that the claims were frivolous, malicious, or failed to state a claim (Doc. 7, p. 2). See 28 U.S.C. § 1915(g). Davenport, however, argued that he was in imminent danger of serious physical injury, an exception to Section 1915(g). Because Davenport alleged that he suffered from painful rectal protrusions which blocked the passage of feces and caused him pain and itching, the Court allowed Davenport to proceed under the imminent danger exception to the three-strike rule (*Id.* at p. 3).

Defendants Dr. Percy Myers and Wexford Health Sources, Inc. filed a response in opposition to the motion (Doc. 29). Defendant David Mitchell sought and was granted leave to join in the response (Docs. 30, 31).

Dr. Myers and Wexford also submitted medical records documenting Davenport's care since his hemorrhoid surgery. On May 27, 2022, Davenport's surgery was performed by Dr. Will Chapman Jr. (Doc. 29-1, p. 27). During the procedure, three internal and external hemorrhoids were excised (*Id.*). Davenport was prescribed oxycodone for pain, daily sitz baths for one month, a high fiber diet, and Colace for constipation (*Id.*). Upon his return to the prison, Dr. Myers examined Davenport. He noted no signs of bleeding (*Id.*). Dr. Myers prescribed the narcotic pain medication Ultram, a clear liquid diet, and a follow-up with medical staff (*Id.*). He also was provided with Fiber-Lax tablets, to be taken three times per day (*Id.* at p. 328).

On May 30, 2022, Davenport presented to nursing staff with complaints of rectal bleeding (*Id.* at p. 138). Nurse Deb Blades did not note any active bleeding but provided Davenport with Tylenol and hemorrhoid cream (*Id.*). Later that same day, Davenport again complained about his rectal bleeding (*Id.* at p. 140). The nurse noted that Davenport was brought to the healthcare unit on a stretcher after a code was called for his rectal bleeding (*Id.*). Davenport was admitted to the healthcare unit for observation and directed to contact a nurse before flushing the stool so that his bleeding could be monitored (*Id.*). Davenport did not report any bleeding, nor did he show the nurse any signs of bleeding in his stool for the entire observation period (*Id.* at pp. 141-142). He

3

requested to be released back to his cell (*Id.* at p. 142). He was released from the healthcare unit with a follow-up appointment scheduled for one week (*Id.*).

On June 1, 2022, Davenport had a follow-up with Dr. Myers and complained of bleeding post-surgery (*Id.*). Dr. Myers noted there were no signs of bleeding at the time of the appointment, but noted Davenport complained of an urge to defecate (*Id.*). Dr. Myers prescribed Xylocaine ointment (*Id.* at p. 143). On June 5, 2022, Davenport complained to a nurse of pain with bowel movements (*Id.* at p. 145). The nurse did not refer him to a doctor (*Id.*). On June 7, 2022, Dr. Myers made a note about Davenport's Trulance prescription and noted no complaints of diarrhea or constipation (*Id.* at p. 146).

On June 24, 2022, Davenport submitted a sick call request slip complaining of a hemorrhoid protruding from his rectum (*Id.* at p. 153). Davenport saw Dr. Myers four days later about his continuing hemorrhoid issues (*Id.* at p. 155). Dr. Myers referred Davenport to collegial review for a post-surgery follow-up with the colorectal specialist (*Id.*). Dr. Myers submitted an urgent request for a follow-up appointment with a specialist regarding Davenport's post-surgery issues (*Id.* at p. 65).

On July 6, 2022, Davenport was evaluated off-site by a gastroenterologist who noted an anal fissure, or small tear in the anus, at the six o'clock region (Doc. 29-1, p. 157). Davenport was prescribed Trulance, Mirolax, and Nupercainal ointment (a hemorrhoid cream) (*Id.*). Dr. Myers approved all of the recommended treatments and noted that a follow-up with the gastroenterologist would be scheduled in six months (*Id.* at p. 158). The follow-up was authorized for six months (*Id.* at p. 69).

On March 7, 2023, Davenport had a follow-up appointment with nurse practitioner Michael James in gastroenterology (*Id*. at p. 177). Davenport reported that the Trulance was working, but he still had intermittent constipation resulting in straining (*Id*.). He also acknowledged that he continued with weightlifting which also resulted in straining (*Id*.). Davenport reported swelling of a protrusion after bowel movements with occasional bleeding and requested a referral back to the surgeon who performed his previous surgery, Dr. Glasgow (*Id*.). NP James noted complaints of anal bleeding, rectal pain, and constipation (*Id*.). He recommended that Davenport be referred to a colorectal surgeon for further evaluation.

On June 7, 2023, Dr. Myers met with Davenport to have his Simethicone (Gas-X) increased and his Colace and fiber discontinued (*Id*. at p. 252). Dr. Myers agreed to increase the Gas-X but requested that Davenport sign a refusal form for the Colace and fiber (*Id*.). Davenport refused to sign the form and left the appointment (*Id*.). In Davenport's motion for counsel (Doc. 38), Davenport stated that on September 13, 2023, PA Desai examined his protrusions. Desai acknowledged that Davenport had two hemorrhoids and indicated that he would be referred to a colorectal specialist (Doc. 38, p. 16).

On December 7, 2023, the Court held an evidentiary hearing and heard testimony from both Davenport and Nurse Practitioner ("NP") Bobby Blum. Davenport testified that he continues to suffer from painful hemorrhoids and that he has not received any medical care for the condition since his September 2023 examination by the physician assistant. Although he acknowledged seeing Dr. Myers and NP Blum in October 2023,

5

those appointments were for an unrelated heart condition. NP Blum testified that PA Desai requested a referral for a colorectal surgical consultation and that referral was approved on September 20, 2023. Although inmates are not informed of the exact date of appointments with outside doctors for security reasons, NP Blum confirmed that Davenport was scheduled to see the colorectal surgeon by the end of December.

## LEGAL STANDARDS

### A. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable

6

balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively

serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

## ANALYSIS

Simply put, the Court finds that a preliminary injunction is not warranted at this time. Davenport specifically requested a referral to a colorectal surgeon. It is clear from the testimony of NP Bobby Blum that the referral to the colorectal surgeon was approved, and the appointment has been set. Although officials cannot reveal the date of the appointment to Davenport for security reasons, Blum testified that the appointment was set for this month. The Court finds Blum's testimony on this point to be credible, and the Court has received adequate assurances that Davenport will see a specialist in the next few weeks. Because Davenport is scheduled to receive the specific care requested in his motion, the Court denies his motion for preliminary injunction (Doc. 2). Should

Davenport fail to see the specialist by the end of the year, or should he continue to have issues with his care after the appointment, Davenport may file a renewed motion for injunctive relief at that time.

## CONCLUSION

For the reasons stated above, Davenport's motion for preliminary injunction (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  December 8, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**